UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WENDELL R. STOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:19-CV-443-HBG |
| ) | |
| ANDREW M. SAUL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Wendell R. Stowers ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On February 16, 2016, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of disability that began on April 1, 2012. [Tr. 15, 146–48, 165]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 94]. A hearing was held on November 28, 2017. [Tr. 30–60]. On September 12, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 15–25]. The Appeals Council denied Plaintiff's request for review

on September 6, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on November 5, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2012, through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: panic disorder, mood disorder, and major depressive disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform work at all exertional levels but with the following non-exertional limitations: The claimant can perform simple tasks with occasional interaction with co-workers and supervisors, but no interaction with the general public, where changes in the workplace are infrequent. He is unable to meet fast-paced high production demands.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on March 26, 1963, and was 54 years old, which is defined as a individual closely approaching advance age,

on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

[Tr. 17–25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

3

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ erred by assigning great weight to the assessed Global Assessment of Functioning ("GAF") scores. Next, Plaintiff alleges that the ALJ

5

failed to provide good reasons for the rejection of the treating source opinion of his nurse practitioner, Christina Raman, APRN, BC, in contravention of 20 CFR 404.1527. The Court will review Plaintiff's allegations of error in turn.

### A. ALJ's Review of Plaintiff's GAF Scores

Plaintiff maintains that the ALJ's reliance on his GAF scores was improper. [Doc. 14 at 4–7]. Both parties agree that three GAF ratings appear in the record. *See* [*Id.* at 5]; [Doc. 16 at 5]. During Plaintiff's initial appointment with Ms. Raman on October 13, 2006, she assessed a GAF rating of 55. [Tr. 454–58].[1] Then, on March 1, 2012, when completing a medical source statement in support of Plaintiff's disability claim, Ms. Raman assessed a GAF rating of 50. [Tr. 273]. Lastly, consultative examiner Kathryn Smith, Ph.D. assigned a GAF score of 58 on July 17, 2013. [Tr. 435].

In the disability decision, the ALJ improperly stated that "[t]he record shows Ms. Raman assigned a GAF score of 55 in 2013, noting a good prognosis. [Tr. 20]. The ALJ found that "[g]reat weight is given to this GAF score of 55, which indicates moderate symptoms, as it is generally consistent with the longitudinal record, which supports no more than moderate limitations." [*Id.*]. After detailing Plaintiff's following mental health treatment, the ALJ reviewed Dr. Smith's consultative examination, including that she assigned Plaintiff a GAF score of 58, "which indicates moderate symptoms." [Tr. 21–22]. The ALJ found that "[g]reat weight is given to this GAF score, as it is consistent with the longitudinal record of moderate limitations," but "little weight is given to this opinion to the extent it suggests more than moderate symptoms as

---

[1] While both parties stated that the GAF score of 55 was assessed in 2006, the Court notes that it is unable to discern the date noted in the cited treatment note [Docs. 291, 458], as well as that the treatment note appears in sequence with other treatment notes from 2013–14.

6

greater than moderate symptoms do not align with her assigned GAF score of 55 and the longitudinal record." [Tr. 22].

When reviewing Ms. Raman's March 1, 2012 opinion, the ALJ noted that although Ms. Raman was not an acceptable medical source, little weight was assigned to the opinion because it was overly restrictive and not consistent with her treatment notes or the longitudinal record. [*Id.*]. Additionally, the ALJ stated that "this assigned GAF score of 50 is inconsistent with Ms. Raman's other assigned GAF score of 55 in the record, which score indicates moderate symptoms and is given greater weight as it better aligns with the overall record." [*Id.*].

"A GAF score is [] not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)); *see Bryce v. Comm'r of Soc. Sec.*, No. 12–CV–14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014) ("Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis."). The Social Security Administration recently issued a clarification which has long been supported by Sixth Circuit caselaw: GAF scores are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported and consistent with other record evidence it is entitled to little weight. Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013) REV (Oct. 14, 2014).[2] *See, e.g., Cunningham v. Comm'r of Soc. Sec.*, No. 3:19-CV-00314-SKL, 2020 WL 3229289, at *5 (E.D. Tenn. June 15,

---

[2] One difference the administrative message established is that GAF scores assigned by "acceptable medical sources" are now to be considered "medical opinions." *Id.*

2020) ("In 2013, the SSA released Administrative Message 13066 (AM-13066), which has since been revised twice, though the parties do not argue the newer versions differ in any material way from the original."); *Steiner v. Berryhill*, No. 3:17-CV-1-HBG, 2018 WL 1525072, at *8 (E.D. Tenn. Mar. 28, 2018).

Administrative Message 13066 "does indeed note several problems with using GAF scores to evaluate disability, such as the fact that the GAF scores are not standardized, they are not designed to predict the outcome of treatment, and the GAF scores are very general and therefore need sufficient supporting detail to have any significant meaning." *Yee v. Comm'r of Soc. Sec.*, No. 17-cv-10328, 2018 WL 2181466, at *6 (E.D. Mich. Jan 31, 2018), *report and recommendation adopted by*, 2018 WL 1250478 (E.D. Mich. Mar. 12, 2018). "Nevertheless, '[d]espite these flaws, AM-13066,' including the current version, provide that 'a GAF score is a medical opinion under the Regulations and that it should be considered by the ALJ in conjunction with all of the other relevant record evidence when assessing disability claims involving mental disorders.'" *Cunningham*, 2020 WL 3229289 at *5 (quoting *Yee*, 2018 WL 2181466 at *6).

Plaintiff claims that "the ALJ's reliance upon GAF scores was clearly misplaced and ultimately led the ALJ to 'give little weight' to the opinions of a long-time treating psychiatric nurse practitioner and two separate, independent psychologists who rendered opinions supportive of disability." [Doc. 14 at 7]. Under the applicable case law discussed above regarding an ALJ's analysis of GAF scores, the Court finds that the ALJ appropriately considered the assessed GAF scores in the record as medical opinions. *See Cunningham*, 2020 WL 3229289 at *5; *see, e.g.*, *Vargas v. Berryhill*, No. 18-1121, 2019 WL 3036533, at *8 n.12 (E.D. Pa. Jan. 30, 2019) (finding an ALJ was entitled to treat GAF scores "as medical opinion evidence" in claim filed before March 27, 2017).

"In AM–13066, the SSA also explicitly advises ALJs that '[a] GAF rating alone is never dispositive of impairment severity. DO NOT: . . . Equate any particular GAF rating with a listing-level limitation . . . [or] Equate a particular mental residual functional capacity assessment . . . [T]here is no correlation between GAF ratings and the B criteria in the mental disorders listings." *Myers v. Comm'r of Soc. Sec.*, No. 1:14-CV-271-HSM-SKL, 2015 WL 9906165, at *5 (E.D. Tenn. Dec. 30, 2015), *report and recommendation adopted sub nom. Myers v. Colvin*, 2016 WL 297753 (E.D. Tenn. Jan. 22, 2016); *see, e.g.*, *Johnson v. Colvin,* No. 3:12–CV–00443, 2015 WL 1839641, at *4 (M.D. Tenn. Apr. 21, 2015). However, the Court finds that the Commissioner has correctly stated that administrative messages merely direct ALJs on proper procedures, rather than agency policy, and Plaintiff has not cited any case law or regulations other than AM-13066 in support of his argument. Moreover, the ALJ appropriately detailed the extent to which she found the GAF scores were consistent with the overall medical record.

Ultimately, the Court finds that the ALJ was entitled to consider the GAF scores as medical opinions, and appropriately detailed the weight afforded to them. *See Yee*, 2018 WL 2181466 at *6 ("Despite these flaws, AM-13066 provides that a GAF score is a medical opinion under the Regulations and that it should be considered by the ALJ in conjunction with all of the other relevant record evidence when assessing disability claims involving mental disorders."). After reviewing the medical record with respect to Plaintiff's mental impairments in great detail, the ALJ found that the record was more consistent with the GAF score of 55 assessed by Ms. Raman than the higher GAF score assessed by Dr. Smith or the lower GAF score assessed by Ms. Raman. *See, e.g.*, *Cunningham*, 2020 WL 3229289 at *6 ("Again, in spite of Plaintiff's contrary argument, a fair reading of the ALJ's decision is that she found the record consistent with the more mild/moderate GAF scores than with the more extreme restrictions opined to by Nurse McCarter

and Sharon Burnside, M.D.").

Plaintiff largely does not challenge the ALJ's provided reasons for finding that he had no more than moderate limitations in mental functioning; rather, he claims that it was improper for the ALJ to assign great weight to his GAF scores. Here, the ALJ appropriately detailed that "the medical record reveals routine office visits for medication management and adjustments with occasional treatment gaps," that Plaintiff received conservative mental health treatment, and that Plaintiff reported improvement with treatment. [Tr. 20–24]. Additionally, the ALJ reviewed Plaintiff's reported activities of daily living. [Tr. 23]. The ALJ afforded great weight to the opinion of state agency mental health consultant, Rebecca Joslin, Ed. D., while also explaining why she did not afford great weight to the other medical opinions of record. [*Id.*]. Therefore, the ALJ properly relied on Plaintiff's GAF scores as one piece of evidence exhibiting Plaintiff's mental functioning. Accordingly, the ALJ provided support for her findings that the "longitudinal record" did not support more than "moderate symptoms." [Tr. 22].

Lastly, the Court finds that the ALJ's incorrect statement that Ms. Rama's initial GAF score was assigned in 2013—rather than 2006—does not constitute a basis for remand because the disability decision is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). The ALJ did not base her decision on the mistaken belief that this GAF score was assessed on a later date.

"[A] plain reading of the ALJ's decision demonstrates that the ALJ did not rely solely on Plaintiff's GAF scores in reaching her determination regarding Plaintiff's disability claims." *Yee v. Comm'r of Soc. Sec.*, No. 17-cv-10328, 2018 WL 2181466, at *6 (E.D. Mich. Jan 31, 2018), *report and recommendation adopted by*, 2018 WL 1250478 (E.D. Mich. Mar. 12, 2018). Therefore, the Court finds that the ALJ properly considered Plaintiff's GAF scores and Plaintiff's assignment of

10

error does not constitute a basis for remand.

### B. ALJ's Treatment of Ms. Raman's Opinion

Plaintiff claims that the ALJ erred by failing to provide good reasons for her rejection of his treating nurse practitioner, Ms. Raman's, opinions. [Doc. 14 at 8]. Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Social Security Ruling 06-03p governs the opinions of "not acceptable medical sources." 2006 WL 2329939, at *2 (Aug. 9, 2006).[3] Evidence from those who are "not acceptable medical sources" or "other sources," including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *2; *see McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of 'other sources.'") (citing 20 C.F.R. § 416.913(d)(1)).

Therefore, as an "other source," Ms. Raman's opinions were not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'"). Interpreting Social Security Ruling 06-03p, the Sixth Circuit has found that "[o]pinions from non–medical sources

---

[3] "SSR 06-03p was rescinded [as to claims filed on or after] March 27, 2017, *see* Notice of Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision, and as such, applies here." *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-2446, 2018 WL 1377790, at *7 n.6 (N.D. Ohio Mar. 19, 2018).

who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

As detailed above, Ms. Raman completed a Medical Source Statement on March 1, 2012, stating that Plaintiff was "unable to function in any type of work or social setting" due to his bipolar disorder. [Tr. 270]. Ms. Raman assessed that Plaintiff had "poor ability" in the following general categories: capacity to interact appropriately, communicate effectively, and engage in other aspects of social functioning; ability of patient to adapt to stressful circumstances in work or work-like settings where failure to adapt results [in] repeated episodes of deterioration or decompensation which cause patient to withdraw or to experience an exacerbation of symptoms; understand, remember, and carry out complex instructions; and relate predictably in social situations. [Tr. 271]. However, Ms. Raman opined that Plaintiff had a good ability to perform activities of daily living independently and understand, remember, and carry out simple instructions. [*Id.*]. Additionally, Ms. Raman assessed that Plaintiff had a fair ability in concentration, persistence, and pace; as well the ability to understand, remember, and carry out detailed, but not complex, instructions and behave in an emotionally stable manner. [*Id.*].

When reviewing specific categories, Ms. Raman found that Plaintiff had a poor ability to deal with the public; deal with the stress of ordinary work; demonstrate reliability; persist at assigned tasks; relate to peers, supervisors, and co-workers; work at a consistent pace for acceptable periods of time; and timely complete tasks commonly found in work settings. [Tr. 272]. Ms. Raman assessed that Plaintiff had a good ability to maintain personal appearance and

12

be aware of hazards, as well as that he had a fair ability to follow work rules, use judgment, and maintain attention. [*Id.*].

In the disability decision, the ALJ assigned little weight to Ms. Raman's medical source statement. The ALJ assigned "little weight . . . to this opinion, as it is overly restrictive and is not consistent with her treatment notes and the longitudinal record." [Tr. 22]. The ALJ noted how "Ms. Raman's treating notes show mostly normal mental status exams, other than for hallucinations in July 2017, when the claimant was going through some medication changes." [*Id.*]. Additionally, as discussed above, the ALJ found that the assessed GAF score of 50 was inconsistent with the other assigned GAF score of 55.

Next, the ALJ found that "Ms. Raman's opinions of poor limitations are given little weight to the extent that they exceed the restrictions in the residual functional capacity." [*Id.*]. The ALJ provided the example that although Ms. Raman "determined the claimant had poor capacity to interact appropriately, communicate effectively, and engage in other aspects of social functioning," contrary evidence in the medical record included "a treatment note in January 2016 show[ing] the claimant was going to a movie and he testified that he may go with his wife to a grocery store." [*Id.*]. Further, the ALJ detailed how Ms. Raman's assessed poor limitation in dealing with ordinary stress was inconsistent with a "July 2014 treatment note, which referenced the store burning down, reflects essentially normal findings upon mental examination." [*Id.*].

First, Plaintiff did not challenge any failure by the ALJ to specifically cite to Ms. Raman's April 8, 2013 Medical Source Statement. Moreover, the Court finds that any failure by the ALJ to do so does not constitute reversible error due to the significant overlap and similarity between the two opinions, with Ms. Raman largely assessing the same limitations. A review of other Social Security disability cases reveals that substantial evidence supports an ALJ's RFC determination

13

when, although an ALJ may have failed to assign a specific weight to a nurse practitioner's opinion, the ALJ discussed it or provided reasons for discounting the opinion. *See Mullins v. Colvin*, No. 3:14-cv-01757, 2015 WL 1472017, at *8 (N.D. Ohio Mar. 31, 2015) (finding substantial evidence supported the ALJ's determination despite the fact that the ALJ failed to acknowledge the nurse practitioner's opinion, as the Court was "satisfied that the ALJ at least considered the relevant evidence"); *Mitchell v. Comm'r of Soc. Sec.*, No. 13-10178, 2014 WL 1230036, at *7 (E.D. Mich. Mar. 25, 2014) (finding substantial evidence supported the ALJ's determination despite not assigning specific weight to a nurse practitioner's opinion, because the ALJ discussed the opinion).

Here, the ALJ properly considered Ms. Raman's opinions and provided several reasons for assigning them little weight. The ALJ detailed the evidence in the medical record that he found inconsistent with Ms. Raman's opinion both immediately after affording it little weight, as well as throughout the disability decision. Additionally, the ALJ properly considered whether Ms. Davis' opinion was consistent with the medical record, and ultimately found that the medical record did not support the assessed poor limitations. "The extent to which a physician assistant's opinion [also an other source] is consistent with the record as a whole is a factor in determining how much weight to give that opinion." *Scruggs v. Colvin*, No. 2:15-058, 2016 WL 6110457, at *4 (M.D. Tenn. Sept. 29, 2016) (citing *Irvin v. Comm'r of Soc. Sec.*, 573 F. App'x 498, 501 (6th Cir. 2014)), *report and recommendation adopted by*, 2016 WL 6094370 (M.D. Tenn. Oct. 19, 2016).

Plaintiff claims that the ALJ's statement that Plaintiff had "mostly normal mental status exams, other than for hallucinations in July 2017, when [he] was going through some medication changes," is not supported by Ms. Raman's treatment notes. [Tr. 22]. However, Plaintiff merely points to treatment notes reflecting anxiety in his presentation and hallucinations beginning in

14

December 2016 and continuing through September 2017. [Doc. 14 at 8]. The Court finds that the ALJ appropriately concluded that Plaintiff had normal mental status examinations and noted Plaintiff's hallucinations. Additionally, the Court has already found that the ALJ appropriately considered the assessed GAF scores.

Lastly, Plaintiff claims that the ALJ cherry-picked "treatment notes to discredit the treating nurse practitioner's opinion," pointing the cited treatment note about Plaintiff going to a movie and accompanying his wife shopping. [*Id.*]. Additionally, Plaintiff notes that Ms. Raman's treatment notes reflected that he was "stressed" upon the family store burning down. [*Id.* at 9]; *see* [Tr. 253–57]. Ultimately, although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

The ALJ considered Ms. Raman's status as an "other source," and properly explained the weight assigned to her opinions. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016). Further, the ALJ was not required to assign controlling weight to the opinions, and the ALJ assessed how Ms. Raman's opinions were consistent with the medical record as a whole. The consistency of a medical opinion with other evidence in the record is one factor that may be considered in evaluating medical opinion evidence from an "other source." *See* SSR 06-03p, 2006 WL 2329939, at *4. Here, the ALJ discussed the medical record regarding Plaintiff's mental health throughout the decision, and summarized Plaintiff's treatment record as a reason for

15

assigning little weight to the opinion. *See id.* at *4–5 (noting that whether an other source's opinion is consistent with other evidence is relevant to evaluation of source's opinion); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

Lastly, the ALJ did not summarily dismiss the opinion because it was given by a nurse practitioner. *See, e.g.*, *Antonaros-Ewing v. Comm'r of Soc. Sec.*, No. 3:14-CV-13, 2015 WL 5047968, at *5 (S.D. Ohio Feb. 17, 2015) ("Such detailed and reasoned explanation shows that, contrary to Plaintiff's contention, the ALJ did not discount [the nurse practitioner's opinions] solely because she is not an 'acceptable medical source.' Instead, the ALJ appropriately recognized that—as an 'other source'—[the nurse practitioner's] opinions are not entitled to 'special deference' under the regulations (in comparison to, for example, a treating physician)."); *cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (finding the ALJ failed to properly assess the nurse practitioner's opinion, as the "ALJ's *only* explanation for discounting [the nurse practitioner's] opinion was that '[the nurse practitioner] is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination'").

Accordingly, the Court finds that the ALJ appropriately considered Ms. Raman's opinions and properly stated his reasons for assigning them little weight. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("Thus, the ALJ properly considered the [therapist's] opinion as an 'other source' and explained her reasons for giving it 'little to no weight.'").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] will

16

be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge